GEARHART LAW, LLC
Richard Gearhart, NJ Bar No.: 022742006
Sergei Orel, NJ Bar No.: 008862001
41 River Road,
Summit, NJ 07901
(908) 273-0700

5 Penn Plaza
New York, NY 10001
(917) 565-6964

Attorneys for Plaintiff
Dynamite Marketing, Inc.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dynamite Marketing, Inc., <br><br> Plaintiff, <br><br> v. <br><br><br> The WowLine, Inc., Nancy J. Krosser, Adam J. Krosser, individually and d/b/a www.wowline.com, Sherman Specialty Inc; Sherman Specialty LLC; www.superiorpromos.com; www.usimprints.com; www.4allpromos.com; Unknown Websites 1-10; Various John Does 1-10, and Unknown Entities 1-10, <br><br> Defendants. | CIVIL ACTION NO.: <br><br> COMPLAINT FOR DESIGN PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION AND UNJUST ENRICHMENT |

1

Plaintiff Dynamite Marketing, Inc. ("Dynamite" or "Plaintiff"), through its attorneys, sues defendants named above and says:

## STATEMENT OF THE CASE

This is a suit by Dynamite against Defendants The WowLine, Inc., Nancy J. Krosser, Adam J. Krosser, Sherman Specialty Inc., Sherman Specialty LLC; (collectively referred to as "Wow" or "Defendants" or "Co-Defendants"), individually and doing business as www.wowline.com; www.superiorpromos.com; www.usimprints.com; www.4allpromos.com; Unknown Websites 1-10; Unknown John Does 1-10, and Unknown Entities 1-10 for permanent injunctions, damages, treble damages or profits, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs from defendants for its willful and malicious acts. Namely, Defendants are being sued by Dynamite as a result of Defendants' sale, offers for sale, distribution, promotion and advertisement of

unauthorized and illegal copies of Dynamite's product the Wallet Ninja, which is a flat, credit-card shaped Swiss army knife-like tool, with 18 tools, by using Dynamite's design, trademark, and trade dress.

As set forth below, the unlawful acts of Defendants constitute design patent infringement, trademark infringement, false designation of origin, false marking, unfair competition and unjust enrichment under Federal and New York common law.

## SUBJECT MATTER JURISDICTION AND VENUE

### Subject Matter Jurisdiction

1.   This Court has jurisdiction under 17 U.S.C. §101 et seq.; 28 U.S.C. §1331(federal question); under the Patent Laws of the United States, 35 U.S.C. § 100 et seq.; and under 28 U.S.C. §1338 (design patent, and trademark). This Court has jurisdiction over infringement claims and claims for trademark infringement under 15 U.S. Code § 1121(a) and unfair competition asserted in this action pursuant to 28 U.S.C. § 1338(b).

2.   This Court has supplemental jurisdiction over the claims in the Complaint that arise under the statutory and common law of the State of New York pursuant to 28 U.S.C § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## Venue

3.   Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b), 28 U.S. Code § 1332 and/or § 1400(a) because a substantial part of the events of omissions giving rise to the claims asserted herein occurred within this District and were directed to this District. Furthermore, venue is proper in New York because the co-defendants The WowLine, Inc., Nancy J. Krosser, and Adam J. Krosser, individually and d/b/a www.wowline.com, and Sherman Specialty Inc; all have the same address in this District in the State of New York, namely, 141 Eileen Way, Syosset, New York 11791, and co-defendant Sherman Specialty LLC have an address

4

in this judicial District at 300 Jericho Quad West, #240, Jericho, New York 11753, and to the best of the Plaintiff's knowledge and belief, all of the involved co-defendant companies, i.e., The WowLine, Inc., Sherman Specialty Inc., and Sherman Specialty LLC, are either registered as corporations and/or limited liability companies in New York State, or are doing business in New York as New York State companies, and co-defendant, Nancy J. Krosser, and Adam J. Krosser, are residents and citizens of the State of New York, whereby this court is convenient as being located in New York State and has jurisdiction over co-defendants' business and personal address, and there is no adequate alternative forum to hear the case (Fed. R. Civ. P. 4(k)(2)).

## PARTIES AND JURISDICTION

4.   Dynamite is a corporation organized and existing under the laws of the State of New York, having an office and principal place of business at

2258 84th Street, 3rd Floor, Brooklyn, New York 11214.
Dynamite conducts business in this District.

5.   Dynamite is the owner of the U.S. Design Patent
Registration Number D751,877 entitled WALLET CARD MULTI
TOOL (a copy thereof is attached as Exhibit A).

6.   Dynamite is the owner of the U.S. Trademark
Registration Number 4,532,869 for the mark WALLET
NINJA. A copy of the trademark registration certificate
is attached as Exhibit B. The trademark in question is
registered and being used in International Class 8 in
respect of "Multi-function hand tools comprised of
screwdrivers, hex wrenches, bottle opener, can opener,
peeler, cell phone stand, box opener, letter opener,
and ruler, with all of the foregoing goods sold as a
unit".

7.   Upon information and belief, Defendants Wow
actively conduct business and their infringing
activities to the detriment and in violation of
Plaintiff's design patent, trademark, trade dress and
other rights, throughout the United States on behalf of

themselves at their website www.wowline.com and at
other websites, such as, but not limited to,
www.superiorpromos.com; www.usimprints.com;
www.4allpromos.com, through the Internet, and possibly
at other websites currently unknown to Plaintiff, in
and directed to this District.

8.  Defendants have committed the acts complained
of herein in this District. Defendants knew their
wrongful acts would have a devastating impact upon
Dynamite - who Defendants knew to be located and
operating its business in New York; and Defendants
specifically directed their infringing actions against
Dynamite and its property in this District.

9.  Upon information and belief, Defendants own and
control the website <www.wowline.com> (the "WowLine
Website"). Upon information and belief, the WowLine
Website has been used to appropriate Dynamite's
design(s) and trademark(s) by selling nearly identical
knock-off versions of Dynamite's WALLET NINJA credit
card sized Swiss-knife like tool product in this

7

District and advertise, distribute, promote, offer for
sale and sell credit card sized tools that look nearly
identical to Dynamite's WALLET NINJA tool, and by using
Plaintiff's WALLET NINJA trademark as a keyword in its
adwords campaign, and by using the unique trade dress
of Dynamite's WALLET NINJA credit card sized 18-part
tool  within this District, wherein said knock off
versions of Plaintiff's credit card sized 18-part tool
have further been transported in and/or to this
District in violation of various intellectual property
rights of Dynamite's. Presumably, Defendants have the
infringing goods manufactured in the People's Republic
of China, at a location and facility that are currently
unknown to the Plaintiff.

10. Upon information and belief, Defendants own
and/or control the following websites such as
www.superiorpromos.com (the "Superiorpromos Website");
www.usimprints.com (the "Usimprints Website"); and, but
not limited to www.4allpromos.com (the "4allpromos
Website"). All of these Defendants' Websites advertise

the knock off versions of Plaintiff's credit card sized 18-part tool, where such knock off versions of Plaintiff's tool have further been transported in and/or to this District in violation of various intellectual property rights of Dynamite's.

11. Upon information and belief co-Defendants are all either individual residents of the State of New York, or companies registered to do business and are actually doing business in, and have a registered and physical address in the State of New York and in this District. Upon information and belief, corporate co-Defendants are operated and controlled entirely by individual co-Defendants and are entities and/or alter egos that are used to manufacture, advertise, sell and/or offer for sale infringing credit card sized 18-part tool as complained herein including but not limited to retail and on-line markets. This Court has jurisdiction over The WowLine, Inc., Sherman Specialty Inc and Sherman Specialty LLC, because upon information and belief, said infringing goods are being sold,

advertised and put in streams of commerce in this
District and directed to this District.

12. Upon information and belief, the WowLine
Website, as well as the Superiorpromos Website, the
Usimprints Website, and, but not limited to, the
4allpromos Website, have all been used to advertise,
distribute, promote, offer for sale and sell the credit
card 18-part tool in commerce, in violation of
Plaintiff's design patent, trademark, trade dress, and
other intellectual property rights, in this District.

13. This Court has personal jurisdiction over the
individual co-defendants Nancy J. Krosser and Adam J.
Krosser, because they are identified as co-owners of
the corporate co-Defendants The WowLine, Inc., Sherman
Specialty Inc, and Sherman Specialty LLC, all in
violation of Plaintiff's design patent, trademark,
trade dress, and other intellectual property rights of
the Plaintiff's, said patent application being a basis
of unfair competition against Dynamite because the
Defendants knowingly violated 28 U.S.C. § 1338. Co-

Defendants have been using Plaintiff's trademark WALLET NINJA as part of their keyword in their adwords campaign, and advertised such adwords on their knock off goods directed to this District and they are primary participants in the alleged action complained of herein. The individual co-defendants Nancy J. Krosser and Adam J. Krosser, have purposefully availed themselves to US District Courts as they have approved the use of such fraudulent adwords advertisement knowing it would influence the market in this District.

14. This Court has personal jurisdiction over the individual co-Defendants Nancy J. Krosser and Adam J. Krosser, because they have sold and continue to sell knock off products in this District, and/or in the streams of commerce with knowledge that said products would be sold in this District. Upon information and belief, such sales by the co-Defendants are substantial, continuous, and systematic.

## STATEMENT OF CLAIM

15.  Dynamite is a leading innovator and marketer of various products and is in the business of bringing useful products to the market focusing on needs of individuals and families focusing on useful products related to light-duty tools, gadgets, and the like.

16.  Plaintiff had an idea of a unique, novel and distinct design of a credit card sized 18-part tool, back in or around the year 2013. The Plaintiff began marketing and selling its credit card sized 18-part tool under a trademark WALLET NINJA on or about August 20, 2013. Plaintiff sells its tool on its website at $9.99 for a WALLET NINJA-branded tool, or $11.99 for a WALLET NINJA 2.0-branded tool.  Displayed below is Plaintiff's product in question:









17. On or about September 11, 2013, Plaintiff filed a United States Trademark Application for the mark WALLET NINJA in respect of "Multi-function hand tools comprised of screwdrivers, hex wrenches, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, with all of the foregoing goods sold as a unit". The Trademark application Serial Number 86/062,277 registered on May 20, 2014 under U.S. Trademark Registration Number 4,532,869 with the USPTO.

18. On February 26, 2014, Alex Shlaferman, the owner of Dynamite, and the inventor of the design for the WALLET NINJA credit card sized 18-part tool, filed a design patent application for his invention of a unique, novel and distinct design of a credit card sized 18-part tool, with the United States Patent and Trademark Office. The application received the Serial Number of 29/483,224. The patent in question registered on March 22, 2016, under the Design Patent Number D751,877.

19. Plaintiff's WALLET NINJA product took off and is now the most popular, number 1 selling compact portable multi-part tool on the Internet that is capable of being carried in a wallet.

20. Defendants unlawfully and willfully simply blatantly copied Plaintiff's popular concept of a credit card sized 18-part tool, by repositioning some of its features on the opposite edge of the credit card shaped tool, and began selling knock off versions of Plaintiff's product, which knock off versions look identical, or nearly identical to Plaintiff's product, on various websites on the Internet, as is described in detail in this complaint. Defendants even call their knock off product in the same or similar manner than the Plaintiff's. Plaintiff markets its product on the Ineternet as a "Wallet Ninja 18-in-1 Multi-purpose Credit Card Size Pocket Tool". Defendants market their knock off much cheaper versions of Plaintiff's tool as "18-in-1 Credit Card Sized Tool". Defendants sell their knock off tools at $1.40 per item if one orders 5000

items. There have been instances of actual confusion
among the consumers where Plaintiff's customers asked
Plaintiff why Plaintiff sells its tools at $9.99, when
its own Plaintiff's tools are sold at $1.40 at WOWLine,
Defendants', website. Images of the Defendants' knock
off copies of Plaintiff's product are displayed below:






















21. Plaintiff's credit card shaped and sized 18-
part tool, i.e., the WALLET NINJA tool, exemplifies the
business and values of Dynamite. The WALLET NINJA tool
is unique. It has a very unique and distinct
appearance, where the positioning of various small

21

tools such as a screw-driver, a bottle opener, a wrench, etc., on the edges of the credit-card shaped metal tool is very well thought through and distinctive, in order to make the tool stand out and be attractive. The WALLET NINJA tool embodies Dynamite's commitment to innovation and to providing its customers with the tools they may need in a pinch, but which are compact and which all fit in their wallet.

22. The WALLET NINJA tool incorporates a trade dress comprising a distinct "look and feel" of elements. This trade dress includes the placement of the various tools on the edges and in the middle of the credit card shaped and sized square piece of metal, which serves as an 18-part tool. Plaintiff's multi-function hand tool is comprised of edges that work as a screwdriver, hex wrench, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, all combined in one credit card shaped and sized unit. These elements of the tool are used on Plaintiff's WALLET NINJA tools in combination to create

Dynamite's WALLET NINJA trade dress. Dynamite's tool incorporates a distinctive visual design and positioning of the tools that has become readily identifiable by the consuming public as originating from Dynamite.

23. The distinctive and innovative "look and feel" of Plaintiff's WALLET NINJA tool includes the following elements that together and in combination create an overall visual impression unique to Dynamite, such as a distinctive credit card sized and shaped multi part hand tool featuring multi-function hand tool comprised of edges that work as a screwdriver, hex wrench, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, all combined in one credit card shaped and sized unit.

24. Plaintiff has contacted Defendants in writing through its lawyers numerous times, demanding that Defendants stop their infringing activities, namely, that Defendants stop selling their knock off versions of Plaintiff's product, thus violating Plaintiff's

numerous intellectual property rights. Defendants have to date refused to stop their infringing activities. Hence this lawsuit.

25. The WALLET NINJA tool is advertised and sold in commerce by Dynamite, in this District, and is notably creative and new. The tool, even absent the name WALLET NINJA, is easily recognizable by being the size of a credit card, and by having a very distinct outline of its edges, the indentations in which work as various small tools that come in handy in everyday life, such as a bottle opener, a can opener, a screwdriver, a wrench, an inch ruler, a slit for inserting a credit card in order to make the tool work as a portable phone stand, etc.

26. Plaintiff's WALLET NINJA tool has been such a smashing success for the Plaintiff, and Plaintiff's WALLET NINJA tool has become so popular among the consumers, that many unscrupulous operators such as the Defendants have begun shamelessly and illegally copying the product in question, selling counterfeit fake

copies of the product. Plaintiff has been tirelessly fighting against such fakes, by taking down postings on the Internet by such unscrupulous operators, which advertise counterfeit products for sale, and by seizing counterfeit goods by the Customs at the border. The current lawsuit represents one of the efforts by Plaintiff to stop illegal sales of counterfeit copies of its WALLET NINJA tool, which illegal sales have been hurting Plaintiff's bottom line tremendously, eating into Plaintiff's profits, depriving Plaintiff of revenue, and contaminating the marketplace with knock-offs of inferior quality, thus providing the unsuspecting customers with an inferior product. Plaintiff's tool sells retail at $9.99 to $11.99. Defendants sell their counterfeit fake copies of Plaintiff's tool at $1.40 per piece, if the customers order 5000 pieces. Defendants sell such fakes in bulk in increments by thousands, which makes a reasonable observer to conclude that Defendants sell many thousands of such fake products, resulting in great

monetary and reputational damage to the Plaintiff. There has been actual confusion in the marketplace among the consumers. Plaintiff has received inquiries from its customers asking why the Plaintiff sells its goods so expensively, i.,e., at $9.99 per item, and why the customers have to pay so much, when there are presumably same products on the Internet for sale on Defendants' websites at $1.40. Such confusion, that Defendants have caused in the minds of the consumers as to the source of the genuine Plaintiff's products, and fake Defendants' knockoffs, has been resulting in great financial and reputational damage to the Plaintiff, and therefore, Defendants' illegal conduct in that respect needs to be stopped immediately.

27. Defendants illegally and without Plaintiff's permission, consent or license, copied Plaintiff's tool and have been selling it on their websites on the Internet. Defendants, in their attempt to make their knock off tool as distinct as possible from Plaintiff's tool, moved the bottle opener and the can opener parts

26

from the right hand side to the left hand side of the
credit card sized and shaped tool, and moved the box
opener part from the left hand side to the right hand
side. However, the overall look and impression of the
knock off tool is identical or nearly identical to the
Plaintiff's original WALLET NINJA tool. For the sake of
displaying the glaring similarities between the
respective products and for comparison, the original
genuine WALLET NINJA and the knock off tool are both
displayed below side by side:


Plaintiff's Original Tool:    Defendant's Knock Off Tool:




28. Additionally, and this came to the attention of the undersigned in the last minute, literally minutes before the filing of the present complaint, the counterfeit activities by the Defendants are now so brazen that they defy belief. Not only Defendants have tried to make their counterfeit product look somewhat different to Plaintiff's authentic product, by repositioning some of the cut outs from the right edge of the WALLET NINJA tool to the left edge, and vice versa, in order to try and defeat a design patent infringement claim, but now Defendants have gone ever farther, dispensing altogether with any caution and now blindly and outright copying Plaintiff's product to the tee without any changes whatsoever, and selling the counterfeit product to large companies, such as Wells Fargo Bank. Please see below:



The WALLET NINJA in the above image, on the left hand side, with the "YOUR LOGO HERE!" inscription is the authentic product. The one on the right, with "WELLS FARGO" on it, is a fake counterfeit knock off copy of Plaintiff's WALLET NINJA that Defendants sold to Wells Fargo. The knock off fake looks 99% exactly the same as the original genuine Plaintiff's product, save for the

wave-shaped slit in Defendant's fake, versus the
straight slit in the authentic product sold by
Plaintiff, and the position of the #2 wrench cut out
being moved further to the right along the bottom edge
in the fake in comparison to its position in the
authentic product.

29. This Court has jurisdiction to resolve claims
made herein by Dynamite for damages that concern and
relate to Defendant's actions for design patent
infringement, trademark infringement, trade dress
infringement, false marking, unfair competition and
unjust enrichment.

30. In the following, Dynamite states its claims
for damages sustained by the intentional actions of
Defendants and requests the court grant it damages,
enhanced damages, treble damages for willful
infringement, legal fees, an injunction and other
relief as deemed necessary under the circumstances.

**COUNT I**

**Design Patent Infringement (Infringement of the D'877 Patent)**

31. Dynamite incorporates all above allegations as if set forth completely herein.

32. Dynamite is the exclusive owner of The US Design Patent D751,877 (the "D'877" Patent).

33. The claimed design of the D'877 Patent is shown in Figures 1 through 4 of the patent and described in the accompanying figure descriptions. See Exhibit A. Representative images are below:



US00D751877S

(12) **United States Design Patent**
Shlaferman

(10) Patent No.: **US D751,877 S**
(45) Date of Patent: ** **Mar. 22, 2016**

(54) **WALLET CARD MULTI TOOL**

(71) Applicant: **Alex Shlaferman**, Brooklyn, NY (US)

(72) Inventor: **Alex Shlaferman**, Brooklyn, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/483,224**

(22) Filed: **Feb. 26, 2014**

(51) **LOC (10) Cl.** ............................................. **08-05**
(52) **U.S. Cl.**
USPC ........................................................... **D8/19**
(58) **Field of Classification Search**
USPC .................. D8/16, 18, 19, 20, 105, 363, 366,
D8/370–377, 380–382
CPC ...... B25F 1/00; B25F 1/02; A45F 2200/0575;
G01B 5/18
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D33,779 | S | * | 12/1900 | Medern et al. | D8/371 |
| D218,272 | S | * | 8/1970 | Bothe | D8/19 |
| D241,006 | S | * | 8/1976 | Wallace | D8/373 |
| D356,243 | S | * | 3/1995 | Eckerman | D8/373 |
| D468,977 | S | * | 1/2003 | Graff et al. | D8/19 |

| | | | | | |
|---|---|---|---|---|---|
| D528,880 | S | * | 9/2006 | Bellflower | D8/16 |
| D666,883 | S | * | 9/2012 | Howard et al. | D8/19 |
| D701,110 | S | * | 3/2014 | Symons | D8/373 |
| D707,091 | S | * | 6/2014 | Barr | D8/16 |
| D729,023 | S | * | 5/2015 | Alho et al. | D8/16 |
| D730,131 | S | * | 5/2015 | Cornell | D8/19 |
| D732,360 | S | * | 6/2015 | Reeder | D8/19 |

* cited by examiner

*Primary Examiner* — Robert M Spear
*Assistant Examiner* — Eliza Bennett-Hattan
(74) *Attorney, Agent, or Firm* — Michael J. Feigin, Esq.;
http://PatentLawNY.com

(57) **CLAIM**
The ornamental design for a wallet card multi tool.

**DESCRIPTION**

FIG. **1** shows a top plan view of the wallet card multi tool.
FIG. **2** shows a bottom plan view thereof.
FIG. **3** shows a bottom perspective view thereof; and,
FIG. **4** shows a top perspective view thereof.
The broken lines shown in the drawings illustrate portions of
a triple ring setting for illustration purposes only, and form no
part of the claimed design.

**1 Claim, 4 Drawing Sheets**



Fig. 1



FIG. 1

Case 2:19-cv-03067-GRB-LGD   Document 1   Filed 05/22/19   Page 34 of 68 PageID #: 126

Fig. 2



FIG. 2

Fig. 3



FIG. 3

Fig. 4

U.S. Patent     Mar. 22, 2016     Sheet 4 of 4          US D751,877 S



FIG. 4

34. Defendants offer a knock off version of the claimed design for sale, including through their various websites. A representative image of knock off credit card sized 18-part tool as taken from Defendants' WowLine Website is below:



ASI# 98360 / PPAI# 112440 /SAGE# 52510





# 18-IN-1 CREDIT CARD SIZED TOOL
## #TOL4

| · QUANTITY |
|---|
| · 150 |
| · 250 |
| · 500 |
| · 1000 |
| · 2500 |
| · 5000 |
| · |

·

Request Quote
Request Sample
Email

FOLLOW US



·

·

© Copyright 2016 Wowline. All rights reserved.

35. Defendants copied the entire Plaintiff's tool and have sold and continue to sell such counterfeit tools in US commerce including in this District.

36. In the eye of the ordinary observer familiar with the relevant prior art, giving such attention as a purchaser usually gives, the claimed design of the D'877 patent and design of Defendant's counterfeit tool are substantially the same, such that the ordinary observer would be deceived into believing that the credit card shaped and sized 18-part tool design of the Defendants is the design claimed in the D'877 patent.

37. Dynamite has never authorized Defendants to make, use, offer to sell or sell its patented tool or the infringing products.

38. The foregoing acts of infringement are willful, intentional, and in disregard of and with indifference to the rights of Dynamite.

39. Defendants have directly infringed, and continue to directly infringe, the D'877 patent by

making, using, offering to sell, selling and/or
importing their counterfeit tool, having substantially
the same ornamental design as the design claimed in the
D'877 patent, in violation of 35 U.S.C. §271(a) and
289.

40. Upon information and belief, Defendants also
induced, and continues to induce, others to infringe
the D'877 patent by encouraging and promoting the use
and/or sale by others of the infringing tool on various
websites, that infringe the D'877 patent, in violation
of 35 U.S.C. § 271(b).

41. Defendants have had actual knowledge of the
D'877 patent since at least the date in the year 2018
on which Defendants received the first cease and desist
letter from the Plaintiff's then attorneys.

42. Upon information and belief, Defendants have
sold and continue to sell, offer to sell, distribute
and market the credit card shaped and sized 18-part
tool that infringes the D'877 patent, including the
WALLET NINJA 18-in-one tool, to end consumers and/or

resellers with the intent that these parties will use,
market, offer to sell and/or sell the products in the
United States in a manner that infringes the D'877
patent.

43. Upon information and belief, Defendants knew or
should have known that the use, marketing, offering to
sell and selling of the infringing products by
Defendants on their website or websites of others, or
their customers would directly infringe the D'877
patent.

44. Defendants' direct and induced infringement of
the D'877 patent has caused and will continue to cause
damage to Plaintiff.

45. Defendants' direct and induced infringement has
also caused and will continue to cause irreparable harm
to Dynamite unless and until such infringing conduct is
enjoined pursuant to 35 U.S.C. § 283 and/or the
equitable powers of this Court.

46. Upon information and belief, Defendants' acts
of infringement have been or will be undertaken with

41

knowledge of the D'877 patent. Such acts constitute willful infringement and make this case exceptional pursuant to 35 U.S.C. §§ 284 and 285, and entitle Dynamite to enhanced damages, treble damages, and reasonable attorney fees.

47. As a result of Defendants' infringement of Dynamite's exclusive rights under the design patent in question, i.e., D'877 Patent, Dynamite is entitled to relief pursuant to under 28 U.S.C. §1338, and to its attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

48. The acts of Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Dynamite irreparable injury. Dynamite has no adequate remedy at law. Pursuant to 35 U.S.C. §§ 284 and 285, Dynamite is entitled to injunctive relief prohibiting Defendants from further infringing Dynamite's design patent and ordering that they destroy all unauthorized copies of the patented tools that they are currently selling on their and other websites.

## COUNT II

## Trademark Infringement (Infringement of the WALLET NINJA Trademark Reg. No.4,532,869)

49. Dynamite incorporates all above allegations as if set forth completely herein.

50. Dynamite is the exclusive owner of US Trademark Registration Number 4,532,869 for the mark WALLET NINJA, which is registered in International Class 8, in respect of "Multi-function hand tools comprised of screwdrivers, hex wrenches, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, with all of the foregoing goods sold as a unit". The trademark registration is valid and remains registered before the USPTO. The Plaintiff has been using the trademark WALLET NINJA continuously in US commerce over more than a five-year period since Augus 20, 2013, and as such, the trademark has become incontestable.

51. Defendants have unlawfully copied Plaintiff's trademark and have been advertising and selling their

counterfeit tools, i.e., identically or nearly identically looking tools that Plaintiff sells, in this District, and continues to sell in US commerce including in this District.

52. Defendants have further unlawfully been using Plaintiff's WALLET NINJA trademark as a keyword in its adwords campaign on the Internet, in order to divert traffic from Plaintiff's website to Defendants' webdsite(s), in order induce the unsuspecting and confused public into buying Defendants' counterfeit tools, i.e., which are identically or nearly identically looking tools that Plaintiff sells, as opposed to purchasing Plaintiff's tools, which the Plaintiff sells in this District, and continues to sell in US commerce including in this District.

53. Dynamite has never authorized Defendants to use its trademarks in respect of identical and similar tools to those of the Plaintiff.

54. The foregoing acts of infringement are willful, intentional, and in disregard of and with indifference to the rights of Dynamite.

55. As a result of Defendants' infringement of Plaintiff's exclusive trademark rights, Plaintiff is entitled to relief pursuant to trademark rights under 15 U.S. Code § 1121(a), and to its attorneys' fees and costs pursuant to 15 U.S.C. §1117(a).

56. The acts of Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury. Plaintiff has no adequate remedy at law. Pursuant to 15 U.S.C. §§1116, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's trademark and ordering that Defendants stop advertising for sale their counterfeit tools by using Plaintiff's trademarks.

**COUNT III**

**Trade Dress Infringement/Unfair Competition, 15 U.S.C. § 1125**

57.  Dynamite incorporates all above allegations as if set forth completely herein.

58.  Dynamite markets, offers, sells, and delivers in U.S. commerce its distinct WALLET NINJA multi-function tool, which is a multi-function credit card shaped and sized 18-in-one tool products through its website and throughout the Internet.

59. Prior to Defendants' conduct that forms the basis for this Complaint, consumers had come to associate the distinctive "look and feel" of the WALLET NINJA multi-function tool.

60. Through its promotional efforts, business conduct, and continuous sales of the WALLET NINJA multi-function tool and its associated trade dress, Dynamite has developed and maintained customers globally and throughout the United States, including in the State of New York. Through its widespread and favorable acceptance and recognition by the consuming public, the "look and feel" of Dynamite's WALLET NINJA multi-function tool has become an asset of substantial

value as a symbol of Dynamite, its high quality products and services, and its goodwill.

61. Accordingly, Dynamite has established valid and enforceable rights in the "look and feel" of the WALLET NINJA multi-function tool, as described above.

62. Notwithstanding 's preexisting valid and enforceable rights in the "look and feel" of the Dynamite WALLET NINJA multi-function tool, Defendants, without permission or approval, are using Dynamite's trade dress on their own knock off tools by offering for sale their own knock off tools that have identical or substantially the same "look and feel" as Dynamite's WALLET NINJA multi-function tool, which knock off tools Defendants sell and continue to sell in the United States, including in New York State.

63. As a result of Defendants' unauthorized sale of their knock off tools, Defendants' have been using and continue to use without authorization Dynamite's trade dress in connection with related products and services.

64. Dynamite and Defendants sell (and have been selling) their respective products to customers and clients and/or the relevant consumer base in the same geographical locations and through the same trade channels.

65. Defendants are direct competitors of Dynamite.

66. Defendants' unauthorized use of the "look and feel" of the Dynamite's WALLET NINJA multi-function tool, in connection with offering for sale and selling counterfeit and competing products is not authorized by Dynamite and is likely to cause consumer confusion and mistake, and to deceive consumers as to the source, origin, or affiliation of Plaintiff's products.

67. Dynamite has a discernible interest in the "look and feel" of the Dynamite WALLET NINJA multi-function tool, and Dynamite has been, and continues to be, injured by Defendants' unauthorized and unlawful use of Dynamite's trade dress.

68. The Music Bed's unauthorized use of the "look and feel" of the Dynamite WALLET NINJA multi-function

48

tool, in connection with unauthorized sale of knock off products is causing confusion among purchasers and potential purchasers of Dynamite's products.

69. The acts by Defendant's described above constitute an infringement and misappropriation of Dynamite's rights in and to the use of the "look and feel" of the Dynamite WALLET NINJA multi-function tool, with consequent damages to Dynamite and the business and goodwill associated with and symbolized by Dynamite's trade dress, and, specifically, give rise to this claim under 15 U.S.C. § 1125.

70. Defendants' acts of unfair competition have caused and are causing great and irreparable harm to Dynamite, Dynamite's goodwill, and Dynamite's rights in and to the "look and feel" of the Dynamite WALLET NINJA multi-function tool, in an amount which cannot be adequately determined at this time and, unless restrained, will cause further irreparable injury and damage, leaving Dynamite with no adequate remedy at law.

71. On information and belief, Defendants' acts of infringement and misappropriation have been and are being committed with actual knowledge of Dynamite's prior rights in the "look and feel" of the Dynamite WALLET NINJA multi-function tool, and are willful and in gross disregard of Dynamite's rights.

72. By reason of the foregoing, Dynamite is entitled to injunctive relief against Defendants, and anyone associated therewith, to restrain further acts of unfair competition and trade dress infringement, and to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of unfair competition and trade dress infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Defendants.

## COUNT IV

## Unfair Competition and False Designation of Origin

## 15 U.S.C. § 1125(a)

73. Dynamite incorporates all above allegations as if set forth completely herein.

74. Dynamite owns common law trademark rights in and to the mark WALLET NINJA in respect of "Multi-function hand tools comprised of screwdrivers, hex wrenches, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, with all of the foregoing goods sold as a unit". The WALLET NINJA mark has been in continuous use in interstate commerce by Dynamite prior to any date which can be legally claimed by Defendants. Dynamite's mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through Dynamite's efforts of promoting its goodwill and reputation in the relevant marketplace.

75. Dynamite owns common law trademark rights to its unique multi-purpose and multi-function credit card-sized and credit card-shaped set of tools recognizable by having a particular shape and layout of the small tools on the edges and in the middle of such

tool, which comprises a screwdriver, hex wrench, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, all appearing as a part of one unit. The tool unit has been in continuous use in interstate commerce by Dynamite prior to any date which can be legally claimed by Defendant. The mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through Dynamite's efforts of promoting its goodwill and reputation in the relevant marketplace.

76. Defendants knowingly and willfully have been and continue to advertise and sell (i) identically or nearly identically looking tool, except for a few minor changes, and/or (ii) tool which is identical to the unique design owned by Dynamite without authorization by Dynamite in the State of New York, and (iii) at a price substantially lower that that of the Plaintiff's ($9.99 for the Plaintiff's tool, versus $1.40 for the Defendant's tool), and across numerous other states where Dynamite and Defendants conduct business.

77. Use by Defendants of (i) the WALLET NINJA mark and/or (ii) the unique design of Dynamite's multi-purpose tool in commerce is likely to cause confusion and has caused confusion, in the marketplace misleading the public into thinking Defendants' unauthorized use is somehow associated with Dynamite, causing competitive injury to Dynamite, its WALLET NINJA mark and its tool.

78. Acts of Defendants as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the services of defendant, and otherwise constitute infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

79. As a direct and proximate result of Defendants' acts, Dynamite has suffered injury, including irreparable injury, and damages, including lost

profits, reasonable royalties, and other damages in an amount to be determined at trial.

## COUNT V

## Common Law Trademark Infringement and Trade Dress Infringement, NY State, NY GBL § 360-k

80. Dynamite incorporates all above allegations as if set forth completely herein.

81. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein. Plaintiff is the owner of common-law trademark rights in Plaintiff's Mark and Trade Dress in New York and throughout the United States. These rights are senior and superior to any rights, which Defendants may claim. Defendants have used in commerce, without Plaintiff's consent, marks and trade dress that are identical or confusingly similar to Plaintiff's Mark and Trade Dress. Defendants' use of Plaintiff's Mark and Trade Dress is likely to cause consumer confusion, deception, or mistake among consumers as to the origin, source, sponsorship, affiliation, or approval by

Plaintiff of Defendant's goods, in violation of New York common law as preserved by New York General Business Law § 360-k.

82. Defendant's conduct as described above has been intentional, willful, deliberate, malicious, and intended to injure Plaintiff, in clear disregard of Plaintiff's legal rights. Plaintiff has no adequate remedy at law inasmuch as money damages alone would not adequately compensate Plaintiff for the harm to its rights, goodwill, and business reputation, with every lost sale of Plaintiff's. Defendant's acts described above greatly and irreparably damage Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.

83. Dynamite owns common law trademark rights in and to the mark WALLET NINJA for a multi-function tool. The WALLET NINJA mark has been in continuous use in interstate commerce by Dynamite prior to any date which can be legally claimed by Defendants. Dynamite's mark is distinctive by virtue of inherent distinctiveness

55

and/or the acquired distinctiveness in the mark,
through Dynamite's efforts of promoting its goodwill
and reputation in the relevant marketplace.

84. Dynamite owns common law trademark rights to
its unique credit card shaped and sized 18-in-one tool
is very distinct and recognizable by having a
particular shape and layout of the small tools on the
edges and in the middle of such  tool, which comprises
a screwdriver, hex wrench, bottle opener, can opener,
peeler, cell phone stand, box opener, letter opener,
and ruler, all appearing as a part of one unit. The
tool unit has been in continuous use in interstate
commerce by Dynamite prior to any date which can be
legally claimed by Defendant. The mark is distinctive
by virtue of inherent distinctiveness and/or the
acquired distinctiveness in the mark, through
Dynamite's efforts of promoting its goodwill and
reputation in the relevant marketplace.

85. Defendants knowingly and willfully have and
continue to advertise and sell (i) knock off 18-in-one

tools that look identical to Plaintiff's tools, (ii)
use Plaintiff's Wallet Ninja trademark as a key work in
its adwords advertisement on the Internet in order to
divert traffic from Plaintiff's website and (iii)
credit card sized tools which are identical to the
unique design owned by Dynamite without authorization
by Dynamite in the State of New York, and across
numerous other states where Dynamite and Defendants
conduct business.

86. Use by Defendants of (i) Plaintiff's mark
and/or (ii) the unique design in commerce is likely to
cause confusion and has caused confusion, in the
marketplace misleading the public into thinking
Defendants' unauthorized use is somehow associated with
Dynamite, causing competitive injury to Dynamite, its
WALLET NINJA mark and the multi-function tool.

87. On information and belief, Defendants acted
with knowledge of Dynamite's ownership of (i) WALLET
NINJA mark and (ii) Plaintiff's toold design and with

deliberate intention or willful blindness to unfairly benefit from the goodwill associated with same.

88. Defendants' acts constitute trademark infringement and unfair competition in violation of the common law of New York.

89. On information and belief, Defendants have made and will continue to make substantial profits and gains to which either is not in law or equity entitled.

90. On information and belief, Defendants will continue infringing acts, unless restrained by this Court.

91. Defendants' acts have damaged and will continue to damage Dynamite, and Dynamite has no adequate remedy at law.

92. The conduct herein complained of was extreme and was inflicted on Dynamite in reckless disregard for its rights. The conduct was in bad faith, harmful to Dynamite, and as such supports an award of exemplary and punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

93. Defendants' appropriation and actual use in connection with counterfeit goods of Dynamite's trademark (i) WALLET NINJA and (ii) multi-funtction tool design and the goodwill and reputation associated therewith and attached thereto, constitutes unfair competition in violation of New York State Law, i.e., New York General Business Law §§ 349 - 350-f.

94. In light of the foregoing, Dynamite is entitled to injunctive relief prohibiting DEFENDANTS from infringing the WALLET NINJA mark and multi-function tool design, and to recover all damages, including attorneys' fees, that Dynamite has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## COUNT VI

### Unjust Enrichment

95. Dynamite re-alleges every allegation in the preceding paragraphs.

59

96. The acts complained of above constitute unjust enrichment of Defendants at the expense of Dynamite in violation of the common law of the State of New York.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands a trial by jury and requests that the Court enter judgment as follows:

(a) Enter judgment against Defendants in favor of Dynamite for the violations alleged in this Complaint;

(b) Compelling Defendants to account to Dynamite for any and all profits derived by Dynamite as a result of their infringing acts;

(c) Award Dynamite all damages sustained by it as a result of Defendants' wrongful acts and all profits realized by Defendants due to its wrongful acts, pursuant to 35 U.S.C. §§ 284 and 285;

(d) At Dynamite's election, awarding statutory damages in the maximum amount against Dynamite

for infringement of Dynamite's design patent,
pursuant to 35 U.S.C. §§ 284 and 285;

(e) Award attorneys' fees and costs pursuant to 35
U.S.C. §§ 284 and 285;

(f) Directing Defendants to pay over to Dynamite
its costs, disbursements and reasonable
attorneys' fees and expenses, together with
pre-judgment interest incurred by Dynamite in
relation to trying to stop the infringement by
the Defendants by way of contacting Defendants
through Plaintiff's attorneys, demanding that
Defendants in fact stop such infringement;

(g) For a preliminary and permanent injunction,
restraining Defendants and its affiliates,
divisions, officers, directors, principals,
servants, employees, successors and assigns,
and all those in active concert or
participation with it from:

  i. Directly or indirectly infringing in any
     manner Dynamite's design patent; and

ii. From causing, contributing to, enabling,

facilitating, or participating in the

infringement of Dynamite's design patent

or other exclusive rights;

(h) Order Defendants to pay discretionary costs and

prejudgment interest;

(i) Order an accounting for any knock off products

not presented at trial and an award by the

Court of additional damages for any such knock

off products;

(j) Order Defendants including all agents,

officers, employees, representatives,

Successors, assigns, attorneys, and all other

persons acting for, with, by, through or under

authority from Defendants or in concert or

participation with Defendants, and each of

them, be enjoined from:

a. advertising, marketing, promoting,

offering for sale, distributing, or selling an

infringing and counterfeit credit card shaped
and sized 18-in-one multi-function tool;

b. using an infringing tool and/or design
on or in connection with any of Dynamite's
goods;

c. using any trademark, name, logo,
design, or source designation of any kind on or
in connection with Dynamite's goods or services
that is a copy, reproduction, colorable
imitation, or simulation of, or confusingly
similar to any of Dynamite's trademarks, trade
dresses, names, or logos; and,

e. using any trademark, name, logo,
design, or source designation of any kind on or
in connection with Dynamite's goods that is
likely to cause confusion, mistake, deception,
or public misunderstanding that such goods or
services are produced or provided by Dynamite,
or are sponsored or authorized by Dynamite, or

are in any way connected or related to
Dynamite;

(k) Defendants be ordered to cease offering for
sale, marketing, promoting, and selling and to
recall all infringing goods, or any other goods
bearing the Dynamite mark or trade dress or any
other a confusingly similar imitation thereof
that is in Defendants's possession or has been
shipped by Defendants or under their authority,
to any customer, including, but not limited to,
any wholesaler, distributor, retailer,
consignor, or marketer, and also to deliver to
each such store or customer a copy of this
Court's order as it relates to said injunctive
relief against Defendants, including posting
same on any and all website and media owned or
controlled by Defendants including but not
limited to Facebook;

(l) Defendants be ordered to deliver up for
impoundment and for destruction, all knock off

64

tools, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Defendants that are found to adopt or infringe any of Dynamite's trademarks or that otherwise unfairly compete with Dynamite and its products;

(m) Defendants be compelled to account to Dynamite for any and all profits derived by Defendants from the sale or distribution of the infringing tools;

(n) Retaining jurisdiction of this action in this Court for the purpose of enabling Dynamite to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of such order, for the enforcement or compliance therewith, and for the punishment of any violation thereof;

(o) Require Defendants to publish on his website,
and anywhere else he mentions WALLET NINJA, to
state that WALLET NINJA and the multi-function
18-in-one tool is sole property of Dynamite and
that any prior statements of association with
Dynamite or WALLET NINJA are false and that
this statement has been ordered by a Federal
Court;

(p) Require Defendants to immediately stop using
WALLET NINJA as keywords in their adword
advertisements on the Internet;

(q) That Defendants unjustly enriched themselves
and that Dynamite be awarded damages arising
out of the unjust enrichment;

(r) That Dynamite asks this Court to enter judgment
in favor of it finding that Defendants violated
the Lanham Act;

(s) Ordering that the US Customs and Border
Protection heretofore seizes and arrests any
and all of Defendants' infringing goods, such

as the knock off tools in question, that
violate Plaintiff's design patent rights,
trademark rights, and other rights;

(t) Enjoining Defendants from making false and
misleading descriptions of fact to potential
customers and to the consuming public;

(u) Awarding prejudgment interest and costs;

(v) Finding this to be an exceptional case and
awarding reasonable attorneys' fees to
Dynamite;

(w) Based on Defendants willful and deliberate
infringement, and to deter such conduct in the
future, Dynamite requests punitive damages
including prejudgment and post-judgment
interest on all monetary awards, and to award
treble damages to Plaintiff;

(x) Grant Dynamite such other and further relief,
at law or in equity, to which Dynamite is
justly entitled.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues

permitted to be tried by jury.

/S/ Sergei Orel
Sergei Orel

GEARHART LAW, LLC
Richard Gearhart, NJ Bar No.: 022742006
Sergei Orel, NJ Bar No.: 008862001
41 River Road,
Summit, NJ 07901
(908) 273-0700

5 Penn Plaza
New York, NY 10001
(917) 565-6964

Attorneys for Plaintiff
Dynamite Marketing, Inc.